ORIGINAL

#3000 26101

FILED-USDC-NDTX-DA
'26 SEP 15 AM10:49

**Kingsley Ike Ogbogu**
**948 Middle Cove Dr.**
**Plano, TX 75023**
**Telephone: 214-402-3991**
**Email: moses.resource.center@gmail.com**
KINGSLEY IKE OGBOGU, PRO SE

**UNITED STATES DISTRICT COURT**
**COUNTY OF NORTHERN DISTRICT OF TEXAS DALLAS DIVISION**

| | |
|---|---|
| **KINGSLEY IKE OGBOGU**<br>Plaintiff,<br><br>vs.<br><br>**UNITEDHEALTHCARE**<br>Defendants | Case No.: 444-2026-02000<br><br>3-26CV3123-N |

## INTRODUCTION

Plaintiff Kingsley Ike Ogbogu brings this civil action against Defendant UnitedHealthcare for unlawful employment discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Plaintiff seeks back pay, compensatory damages, punitive damages, front pay, and a trial by jury.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 42 U.S.C. § 2000e-5(f)(3), which confers original jurisdiction on federal district courts over actions brought under Title VII of the Civil Rights Act of 1964, and under 42 U.S.C. § 12117(a), which incorporates Title

VII's jurisdictional provisions for claims brought under Title I of the Americans with Disabilities Act.

2. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed within the Northern District of Texas, and Defendant conducts business in this district.

3. This action is timely filed. Plaintiff received a Right to Sue letter from the Equal Employment Opportunity Commission dated within the last thirty days, and this Complaint is filed within ninety days of receipt of that notice, as required by 42 U.S.C. § 2000e-5(f)(1).

**PARTIES**

4. Plaintiff Kingsley Ike Ogbogu is an individual residing in Plano, Texas, within the Northern District of Texas. Plaintiff is a Nigerian American, a practicing Catholic, and male. Plaintiff appears in this action pro se.

5. Defendant UnitedHealthcare/Optum is a private employer with its headquarters located at 1 Health Drive, Eden Prairie, Minnesota 55344. Defendant employs more than 500 employees and is subject to the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), and the Americans with Disabilities Act, 42 U.S.C. § 12111(5)(A).

6. At all times relevant to this Complaint, Plaintiff was an employee of Defendant within the meaning of Title VII and the ADA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On or about July 29, 2025, and continuing through the present, Plaintiff reported the discriminatory and retaliatory conduct described in this Complaint to Defendant's Human Resources and Employee Relations departments.

8. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission, assigned Charge Number 444-2026-02000, alleging discrimination on the bases of race, national origin, religion, sex, disability, and retaliation.

9. All claims asserted in this Complaint were included in Plaintiff's original EEOC charge.

10. The EEOC issued Plaintiff a Right to Sue letter within the last thirty days, and Plaintiff files this action within ninety days of receipt of that notice.

11. Plaintiff has satisfied all administrative prerequisites to filing this action. Under Fort Bend County v. Davis, 587 U.S. 541 (2019), Title VII's charge-filing requirement is a mandatory but nonjurisdictional claim-processing rule, and Plaintiff has fully exhausted all administrative remedies.

## FACTUAL ALLEGATIONS

### Background and Employment History

12. Plaintiff began employment with Defendant UnitedHealthcare/Optum January 28th, 2022.

13. Throughout Plaintiff's employment, he performed his duties satisfactorily and met or exceeded Defendant's legitimate performance expectations.

. Plaintiff is a Nigerian American, a practicing Catholic, and male. These are protected characteristics under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

14. Charging Party Kingsley Ogbogu is a Black male of Nigerian national origin, Roman Catholic, over the age of 40, and has a documented neurological disability — Cerebral Palsy — which Respondent UnitedHealthcare has had on file with supporting medical documentation since the Charging Party's date of hire. Charging Party also has an active FMLA designation on file with Respondent.

Charging Party has been employed by UnitedHealthcare as a Senior Clinical Administrative Specialist in a fully remote

15. capacity from his home in Plano, Texas since January 28, 2022, and remains employed as of the date of this charge. His annual compensation is approximately $45,000. His last physical day of work was May 19, 2026, after which his treating physician placed him on short-term disability and FMLA leave as a direct consequence of the discrimination, harassment, and retaliation described herein. His treating physician has diagnosed him with Post-Traumatic Stress Disorder and an increased risk of stroke and heart attack causally related to the workplace conduct described in this charge.

Respondent is a private employer with 500 or more employees and is subject to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 et seq.

The following individuals are identified as responsible for the discriminatory and retaliatory conduct described herein:

- Asma Ahmed — Associate Director
- Anna Metcalf — Manager
- Kayla Loeffler — Supervisor
- Delia Santos — Manager
- Andrea Karkula — Vice President
- Michael Lavoie — Employee Relations Manager
- Yolanda Baez — Supervisor (separate department)

**CHRONICAL ADVERSE EMPLOYMENT ACTION**

**April 16, 2025 — Coercive Meetings and Threats Following Internal HR Complaints**

16. On April 16, 2025, Associate Director Asma Ahmed and Manager Anna Metcalf compelled Charging Party to participate in a

17. Microsoft Teams meeting in which both supervisors expressly stated they were displeased that Charging Party had reported

18. concerns about a hostile work environment to Human Resources. Both Ahmed and Metcalf informed Charging Party that there

would be consequences for his complaints. Additional coercive meetings occurred on May 30, 19. 2025, and June 10, 2025, in which the same message was conveyed. These 20. 20. 20. statements constitute direct evidence of retaliatory intent under 42 U.S.C. §

21. 2000e-3(a).

**May 2025 —Falsified Personnel Records and Blocked Career Opportunities**

22. In May 2025, Plaintiff received internal system notifications stating that he was ineligible to apply for internal positions due to an alleged poor performance appraisal and an alleged active corrective action plan.

23. Plaintiff had never received any such performance appraisal or corrective action plan prior to May 2025.

24. The false information in Defendant's personnel systems blocked Plaintiff from applying to approximately 156 internal positions, including but not limited to Enrollment Quality Specialist, Requisition Number 228-5929, and SafeTrip Customer Service Representative, Requisition Number 2288583.

25. The salary range for the blocked positions was approximately $60,000 to $80,000 annually, substantially higher than Plaintiff's then-current compensation.

26. Official notifications of ineligibility for internal positions were received by Plaintiff in the first week of June 2025.

27. On June 15, 2025, Plaintiff met with Employee Relations Manager Michael Lavoie, who attributed the false personnel file entries to a "system migration error" that allegedly affected approximately 1,000 employees.

28. Lavoie's explanation was later contradicted during a conversation between Plaintiff and senior Human Resources representative "Nika" on October 25, 2025. Plaintiff recorded and transcribed this conversation.

29. The falsified records were never corrected, and Plaintiff was never granted access to the internal positions for which he was qualified.

30. The denial of 156 internal promotion opportunities constitutes a materially adverse employment action that would dissuade a reasonable worker from making or supporting a discrimination charge, as recognized in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

**July 29th 2025-Formal Complaints and Continued Retaliation**

31. On July 29, 2025, Plaintiff formally reported discrimination to Defendant's Human Resources and Employee Relations departments, specifically to Employee Relations Manager Michael Lavoie.

32. Plaintiff continued to report discriminatory and retaliatory conduct through the present date.

33. Despite Plaintiff's repeated complaints, Defendant failed to take any concrete remedial action to stop the discrimination or retaliation.

**September 2025-Transfer to Retaliatory Supervision and Surveillance**

34. In September 2025, Plaintiff was transferred to a team supervised by Kayla Loeffler.

35. Following the transfer, Plaintiff was subjected to continuous and intrusive surveillance of his computer screen and workday activities by Supervisor Kayla Loeffler, Manager Delia Santos, and Supervisor Yolanda Baez.

36. Plaintiff was subjected to repeated false accusations of desk abandonment and call avoidance by Loeffler, Santos, and Baez.

37. Similarly situated employees outside Plaintiff's protected classes were not subjected to such surveillance or false accusations.

**September 22nd 2025-Sex-Based Discriminatory Comment**

38. On September 22, 2025, during a team meeting, Manager Delia Santos made a comment directed at Plaintiff: "how does it feel Kingsley being on a team full of women?"

39. Santos's comment was witnessed by coworker Cherae Chambers-Barrett.

40. Santos's comment evidences discriminatory animus based on Plaintiff's sex and demonstrates that Plaintiff's sex was a motivating factor in the adverse treatment he received, in violation of 42 U.S.C. § 2000e-2(a)(1) and (m).

**December 18th 2025-Falsified Corrective Action Plan**

41. On December 18, 2025, Supervisor Kayla Loeffler and Manager Delia Santos accused Charging Party of walking away from

42. his desk and taking personal phone calls. Based on these false accusations, Respondent issued Charging Party a Corrective

43. Action Plan (CAP). Charging Party denies the underlying conduct and contends the CAP was issued in retaliation for his prior

44. protected activity and as a continuation of the discriminatory targeting described herein.

**February 2026-Denial of Bonus and Merit Pay**

45. In February 2026, during Plaintiff's annual performance review, Defendant denied Plaintiff a bonus in the range of $250 to $1,000 and denied Plaintiff any merit pay increase.

46. Similarly situated employees outside Plaintiff's protected classes received bonuses and merit pay increases during the same review cycle.

47. The denial of Plaintiff's bonus and merit pay was motivated by Plaintiff's race, national origin, religion, sex, and protected complaints of discrimination.

**January 30th 2026-Forced Remedial Training**

48. From January 30th 2026 through January 30th, 2026, Defendant placed Plaintiff on March 2026 through May 8, 2026 — Performance Improvement Plan/ Coaching, and Remedial Training

Between March 2026 and May 8, 2026, Respondent placed Charging Party on Performance

49. Charging Party was again falsely accused of failing to perform his duties correctly and of violating company policy. During

50. this same period, Respondent compelled Charging Party to participate in remedial training administered by Loeffler and

51.Santos, which the Charging Party contends was punitive and not based on any legitimate performance deficiency.

**May 2026-Timesheet Manipulation and Wage Reduction**

52.Supervisor Kayla Loeffler falsely accused Charging Party of failing to enter his time correctly, forcing him to make unnecessary corrections to his timesheets. When Charging Party objected, Loeffler manipulated his timesheet entries, resulting in a significant reduction in the Charging Party's pay. This constitutes an unlawful reduction in compensation as an adverse employment action.

53. As a result of the timesheet manipulation, Plaintiff's annual compensation was reduced from $45,500 to $43,000, as reflected in Plaintiff's 2025 W-2 form.

54. Plaintiff suffered an approximate loss of $2,000 in wages due to Loeffler's manipulation.

55. The timesheet manipulation constitutes unlawful discrimination in compensation in violation of 42 U.S.C. § 2000e-2(a)(1).

**Coworker Corroboration**

56. Cherae Chambers-Barrett, an African American female and Jehovah's Witness, made statements to Plaintiff that Defendant's leadership intended to "run him out of the company."

57. Chambers-Barrett's statements are documented in text messages in Plaintiff's possession.

58. Chambers-Barrett's statements corroborate Plaintiff's allegations of a coordinated campaign of discrimination and retaliation by Defendant's management.

**Comparator Evidence**

59. Throughout the period of discriminatory and retaliatory conduct, Defendant treated similarly situated employees outside Plaintiff's protected classes more favorably.

60. Specifically, Cherae Chambers-Barrett, an African American female and Jehovah's Witness, was given a favorable work assignment consisting of outbound calls only, while Plaintiff was assigned to handle inbound calls, a more demanding assignment.

61. Chambers-Barrett was approved for Six Sigma leadership training, which was signed off by Defendant's leadership. The plaintiff was denied similar opportunities.

62. Desiree Buchnan, a Caucasian Jewish female, was subsequently promoted to supervisor, while Plaintiff was blocked from internal promotions and subjected to false performance documentation.

63. The disparate treatment of Chambers-Barrett and Desiree demonstrates that Plaintiff's race, national origin, religion, and sex were motivating factors in the adverse actions taken against Plaintiff.

**May 19th 2026-Forced Medical Leave**

64. As a direct and proximate result of the sustained discrimination, harassment, and retaliation described herein, Charging Party's

treating physician removed him from work effective May 19, 2026, placing him on short-term disability and FMLA leave.

65. Charging Party has been diagnosed with Post-Traumatic Stress Disorder and an elevated risk of stroke and heart attack.

66. Charging Party's forced medical absence constitutes a continuing adverse employment

67. consequence of Respondent's unlawful

68. conduct. Respondent's conduct also implicates the Family and Medical Leave Act, 29

69.U.S.C. §2601 et seq., including

70. potential interference with and retaliation for the Charging Party's exercise of FMLA rights.

**CONTRIBUTING FACTORS TO HOSTILE WORK ENVIRONMENT**

71. The discriminatory conduct alleged herein, including but not limited to the retaliatory

72. meetings, false accusations, surveillance, sex-based comments, falsified records, denied opportunities, and forced medical leave, created a hostile work environment.

73. The conduct was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

74. The conduct was objectively and subjectively hostile and abusive under the standard set forth in Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993).

75. Defendant is liable for the hostile work environment created by its supervisors and managers, including but not limited to Asma Ahmed, Anna Metcalf, Kayla Loeffler, Delia Santos, Yolanda Baez, and Andrea Karkula.

**Employer Notice and Failure to Correct; Supervisor Liability; Pretext**

76. Charging Party provided actual notice of the discrimination and hostile work environment to Employee Relations Manager

Michael Lavoie, Vice President Andrea Karkula, and Employee Relations Analyst Sarah Zelinski. Despite this notice,

77. Respondent failed to take adequate corrective action and instead permitted the retaliatory conduct to escalate. Respondent is

vicariously liable for the conduct of supervisors Loeffler, Santos, Ahmed, and Metcalf, each of whom had direct authority over

Charging Party's job duties, schedule, and employment status. See Faragher v. City of Boca Raton, Supreme Court, 1998.

The hostile work environment to which Charging Party was subjected — including ongoing surveillance, false accusations, escalating discipline, pay manipulation, and threats — was sufficiently severe and pervasive to alter the conditions of Charging

78. Party's employment and create an abusive working environment. See Harris v. Forklift Systems, Inc., Supreme Court, 1993.

Respondent's stated justifications for the adverse actions — including the "migration error" explanation offered by Lavoie — are pretextual. Lavoie's explanation is directly contradicted by the audio-recorded and transcribed statement of senior HR. representative Nika, obtained on October 25, 2025, in which Nika denied that any such migration error occurred. See McDonnell Douglas Corp. v. Green, Supreme Court, 1973.

**Summary of Adverse Employment Actions**

79. The following adverse employment actions were taken against Plaintiff in retaliation for his protected complaints and because of his race, national origin, religion, sex, and disability:

a. Coercive meetings with threats of retaliation (April 16, May 30, and June 10, 2025);
b. Falsification of personnel records to block internal promotions (May-June 2025);
c. Denial of approximately 156 internal promotion opportunities with salary ranges of $60,000 to $80,000 (June 2025);
d. Transfer to retaliatory supervision (September 2025);
e. Continuous surveillance and false accusations (September 2025 through May 2026);

f. Sex-based discriminatory comment (September 22, 2025);
g. Issuance of false Corrective Action Plan (December 18, 2025);
h. Denial of annual bonus and merit pay (February 2026);
i. Placement on pretextual Performance Improvement Plans (March through May 8, 2026);
j. Timesheet manipulation resulting in approximately $2,000 wage loss (ongoing through 2025);
k. Forced medical leave due to psychological disability caused by Defendant's conduct (May 19, 2026).

80. Each of these adverse actions was materially adverse within the meaning of Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), in that each action would dissuade a reasonable worker from making or supporting a discrimination charge.

81. Plaintiff's protected activity, including his complaints of discrimination and hostile work environment, was a but-for cause of the adverse actions taken against him, as required under Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013)

**COUNT I: DISPARATE TREATMENT UNDER TITLE VII (Race, National Origin, Religion, and Sex Discrimination)**

82. Plaintiff incorporates by reference all preceding paragraphs.

83. Defendant discriminated against Plaintiff because of his race (Nigerian American), national origin (Nigerian), religion (Catholic), and sex (male), in violation of 42 U.S.C. § 2000e-2(a)(1) and (a)(2).

84. Plaintiff is a member of multiple protected classes under Title VII.

85. Plaintiff was qualified for his position and performed his duties satisfactorily.

86. Despite his qualifications and satisfactory performance, Plaintiff was subjected to adverse employment actions, including but not limited to those enumerated in paragraph 79.

87. Similarly situated employees outside Plaintiff's protected classes, including Cherae Chambers-Barrett and Desiree Buchanan, were treated more favorably.

88. Plaintiff has direct evidence of discriminatory intent, including Manager Delia Santos's September 22, 2025 comment, "how does it feel Kingsley being on a team full of women?"

89. In the alternative, under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Plaintiff has established a prima facie case of discrimination, and Defendant's proffered reasons for the adverse actions are pretextual.

90. Plaintiff's race, national origin, religion, and sex were motivating factors in Defendant's adverse employment actions, as required under 42 U.S.C. § 2000e-2(m).

91. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer economic damages, emotional distress, humiliation, and damage to his professional reputation.

## COUNT II: HOSTILE WORK ENVIRONMENT UNDER TITLE VII

92. Plaintiff incorporates by reference all preceding paragraphs.

93. Defendant subjected Plaintiff to a hostile work environment based on his race, national origin, religion, and sex, in violation of 42 U.S.C. § 2000e-2(a)(1).

94. Plaintiff was subjected to unwelcome harassment, including but not limited to retaliatory threats, false accusations, intrusive surveillance, sex-based comments, falsified records, and denial of opportunities.

95. The harassment was based on Plaintiff's race, national origin, religion, and sex.

96. The harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create an objectively and subjectively abusive work

environment under the standard set forth in Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993).

97. The harassment was perpetrated by Plaintiff's supervisors and managers, for whose conduct Defendant is vicariously liable.

98. Defendant had actual knowledge of the hostile work environment through Plaintiff's repeated complaints to Human Resources and Employee Relations.

99. Despite actual knowledge, Defendant failed to take prompt and effective remedial action to stop the harassm (ent.

100. As a direct and proximate result of the hostile work environment, Plaintiff suffered severe psychological trauma, was forced onto medical leave, and continues to suffer economic and emotional damages.

**COUNT III: RETALIATION UNDER TITLE VII-5 (c)**

101. Plaintiff incorporates by reference all preceding paragraphs.

102. Defendant retaliated against Plaintiff in violation of 42 U.S.C. § 2000e-3(a).

103. Plaintiff engaged in protected activity by opposing unlawful employment practices,

104. Charging Party engaged in protected activity under 42 U.S.C. § 2000e-3(a), 29 U.S.C. § 623(d), and 42 U.S.C. § 12203 by

105. reporting discrimination and a hostile work environment to Human Resources, Employee Relations Manager Michael Lavoie,

106. Vice President Andrea Karkula, and Employee Relations Analyst Sarah Zelinski.

107. Following each instance of protected activity, Respondent escalated adverse employment actions against Charging Party, including: direct threats of consequences by Ahmed and Metcalf (April–June 2025); falsification of his personnel file blocking internal promotions (May 2025); transfer to a new team followed by surveillance and false accusations (September 2025);

108. issuance of a CAP (December 18, 2025); PIPs, coaching, and remedial training (March–May 2026); timesheet manipulation and pay reduction (ongoing); and forced medical leave (May 19, 2026). The close temporal proximity between each instance of protected activity and the subsequent adverse action supports a causal connection between Charging Party's complaints and the retaliatory conduct. See Lyons v. Katy Independent School District, 5th Circuit, 2020. Charging Party alleges that his protected activity was the but-for cause of each retaliatory action. See University of Texas Southwestern Medical Center v. Nassar, Supreme Court, 2013 (Title VII retaliation); Gross v. FBL Financial Services, Inc., Supreme Court, 2009 (ADEA retaliation).

109. Plaintiff's protected activity was a but-for cause of the adverse actions taken against him, as required under Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013). The adverse actions were materially adverse in that they would dissuade a reasonable

## COUNT IV: ADA ACCOMMODATION DENIAL, WEAPONIZATION, & RETALLATION 5(d)

110. Plaintiff incorporates by reference all preceding paragraphs.

111. Defendant discriminated against Plaintiff on the basis of disability in violation of 42 U.S.C. § 12112(a) and (b).

112. As a direct result of Defendant's sustained discriminatory and retaliatory conduct, Plaintiff developed a psychological disability that substantially limits one or more major life activities, including the ability to work and concentrate.

113. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12111(8).

114. Charging Party's Cerebral Palsy requires additional time to document clinical notes. Respondent granted a limited

accommodation of 90 minutes for note documentation. Respondent initially denied additional accommodation requests

related to the Charging Party's disability.

115. When Charging Party used the 90-minute accommodation as authorized, Respondent's supervisors — including Loeffler and Santos — treated that use as call avoidance and issued written discipline based on it.

Respondent thus weaponized the Charging Party's approved accommodation as a basis for adverse employment action.

Additionally, Supervisor Kayla Loeffler reviewed Charging Party's FMLA file and asked Charging Party personal questions about his disability.

Respondent failed to engage in a good-faith interactive process as required under 29 C.F.R. Part 1630 and applicable EEOC guidance. See EEOC v. LHC Group, Inc., 5th Circuit, 2014 (addressing employer obligations in the interactive accommodation process). Respondent's discipline of Charging Party for using his approved accommodation and its failure to engage in the interactive process constitute violations of 42 U.S.C. § 12101 et seq. and constitute ADA retaliation under 42 U.S.C. § 12203.

116. Despite Plaintiff's disability, Defendant continued to subject Plaintiff to adverse employment actions through May 8, 2026, including Performance Improvement Plans and retaliatory supervision.

117. Defendant failed to engage in any interactive process or provide reasonable accommodations for Plaintiff's disability.

118. Defendant discriminated against Plaintiff by limiting his opportunities and status because of his disability, in violation of 42 U.S.C. § 12112(b)(1) and (b)(5).

119. Under the burden-shifting framework recognized in E.E.O.C. v. Chevron Phillips Chem. Co., 570 F.3d 606 (5th Cir. 2009), Plaintiff has established a prima facie case of disability discrimination.

120. As a direct and proximate result of Defendant's unlawful disability discrimination, Plaintiff has suffered and continues to suffer economic damages, emotional distress, humiliation, and damage to his professional reputation.

## DAMAGES

121. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer the following damages:

122. **Economic Damages:**

a. Back pay in the approximate amount of $135,000, representing lost wages and benefits for approximately thirty-six months at an annual rate of $45,000, together with prejudgment interest;
b. Lost wages in the amount of approximately $2,000 due to timesheet manipulation;
c. Lost bonus and merit pay in the approximate amount of $250 to $1,000;
d. Lost opportunity damages for denial of approximately 156 internal promotions with salary ranges of $60,000 to $80,000 annually;
e. Front pay and future lost earnings;

125. **Punitive Damages:**

126. Defendant's conduct was willful, wanton, malicious, and carried out with reckless indifference to Plaintiff's federally protected rights.

127. Defendant had actual knowledge of Plaintiff's complaints beginning in April 2025 and deliberately failed to take corrective action, demonstrating conscious disregard for Plaintiff's rights.

128. The April 16, 2025 retaliatory meeting, in which management explicitly warned Plaintiff of consequences for reporting discrimination, evidence of intentional and malicious conduct.

129. Defendant's conduct warrants an award of punitive damages to punish Defendant and deter similar conduct in the future.

130. Plaintiff is aware that under 42 U.S.C. § 1981a(b)(3), compensatory and punitive damages are subject to a statutory cap of $300,000 for employers with more than 500 employees, exclusive of back pay and other equitable relief. Plaintiff reserves all rights regarding the applicability and calculation of this cap.

131. Plaintiff seeks an injunction requiring Defendant to implement policies and training to prevent future discrimination and retaliation.

## JURY DEMAND

132. Plaintiff demands a trial by jury on all claims and issues so triable under 42 U.S.C. § 1981a(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kingsley Ike Ogbogu respectfully requests that this Court enter judgment in his favor and against Defendant UnitedHealthcare/Optum, and award Plaintiff the following relief:

A. Back pay in the amount of $135,000, together with prejudgment interest;

C. Front pay in an amount to be determined at trial;

D. Injunctive relief requiring Defendant to implement policies and training to prevent future discrimination and retaliation;

E. Prejudgment and post-judgment interest as allowed by law;

F. Such other and further relief as the Court deems just and proper.

DATED: 09/15/2026

Respectfully submitted,

Kingsley Ike Ogbogu
Plaintiff Pro Se
948 Middle Cove Dr.
Plano, TX 75023
214-402-3991

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Minneapolis Area Office**
330 South Second Avenue, Suite 720
Minneapolis, MN 55401
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/14/2026

**To:** Kingsley Ogbogu
948 Middle Cove Dr
Plano, TX 75023

Charge No: 444-2026-02000

EEOC Representative and email: DENAE SCHULDT
INVESTIGATOR
DENAE.SCHULDT@EEOC.GOV

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 444-2026-02000.

On behalf of the Commission,

Digitally Signed By:CHERIE DOAK
08/14/2026
CHERIE DOAK
AREA OFFICE DIRECTOR

cc: UnitedHealthcare
c/o Nathan Boone
Littler Mendelson, P.C.
80 South 8th Street Suite 1300
Minneapolis, MN 55402

Please retain this Notice for your records.

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 444-2026-02000 to the District Director at AMRITH AAKRE, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 444-2026-02000 to the District Director at AMRITH AAKRE, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

**are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: ☐ FEPA ☒ EEOC

Agency(ies) Charge No(s):

and EEOC

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Kingsley Ogbogu | +1(214) 402-3991 | 9/28/1981 |

Street Address / City, State and ZIP Code: 948 Middle Cove Dr, Plano, TX 75023

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| UnitedHealthcare | 500 or more | +1(800) 561-0861 |

Street Address / City, State and ZIP Code: 1 Health Dr, Eden Prairie, MN 55344

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

Street Address / City, State and ZIP Code:

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE ☒ COLOR ☒ SEX ☒ RELIGION ☐ NATIONAL ORIGIN

☒ RETALIATION ☒ AGE ☒ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 4-16-2025 Latest:

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I currently work for UnitedHealthcare as a senior clinical administrative specialist, and I have worked there since 01/22/2022 in a remote role from my home in Plano, Texas, with the employer address at 1 Health Dr, Eden Prairie, MN 55344; I am paid about $47,000 per year. This charge arises under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. To my knowledge, the employer has approximately 500 or more employees. I am Black, male, Roman Catholic, over age 40, and I have a neurological disability, Cerebral Palsy, which UnitedHealthcare has had documented with medical documentation since my hire, and I also have FMLA on file. The problems started on 04/16/2025 and have continued to the present, with the most recent incident on 01/13/2026. Starting on 04/16/2025, I was subjected to harassment and discipline after I began documenting issues, including allegations that my personnel file was falsified to show a poor performance appraisal and corrective action that I did not have, and I was threatened with termination during meetings. I reported these issues by email to Michael Lavoie, Employee Relations Manager, and I also escalated by email to a department VP, Andrea Carcula, and after that I experienced increased scrutiny and retaliation. I also applied for many internal roles, and I was repeatedly denied promotion opportunities while the false performance and discipline information was being used against me. After I was moved to another team around September 2025, my immediate supervisor was Kayla Loeffler, and I was placed under ongoing surveillance during my workday, including having my screen watched by other leaders such as Dee Santos, Manager, and Yolanda Baez, Supervisor in another department, which led to repeated accusations that I was away from my desk or engaging in call avoidance, and I received written warnings that escalated to a final written warning. I requested accommodation related to my Cerebral Palsy so I could take notes and perform my work, and some accommodation was denied, and when I used extra time needed for notes I was punished and written up as if it were call avoidance. During this period, my supervisor reviewed my FMLA and asked personal questions about my disability, and I made internal complaints more than once about Kayla Loeffler's conduct, and the targeting continued. Based on the timing of the discipline after my complaints, the inconsistent performance records, and the denial and misuse of accommodations, I was treated this way because of my race, sex, religion, age, and disability. I request that the EEOC accept and docket my charge.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State or Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

January 19, 2026 — Kingsley Ogbogu

Date — *Charging Party Signature*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*